OPINION
{¶ 1} Appellant, Jeanette K. Spence ("Ms. Spence"), appeals the trial court's July 6, 2007 judgment entry reallocating the parental rights and responsibilities of the parties, which includes approval of a shared parenting plan submitted by appellee, Randal K. Spence ("Mr. Spence"). For the reasons that follow, we reverse and remand the decision of the trial court. *Page 2 
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} The parties were married on February 14, 1994. On October 29, 1994, the parties' daughter, Melissa, was born. On February 29, 2000, the parties were divorced, and in accordance with the shared parenting agreement, Ms. Spence was named the residential parent.
 {¶ 4} On February 1, 2006, Mr. Spence filed a motion for reallocation of parental rights/designation as primary residential parent in which he asked the court to name him residential parent. On the same date, Mr. Spence filed a motion to modify child support, with an affidavit, averring that their daughter had been residing with him since January 11, 2006.
 {¶ 5} The matter was referred to mediation without resolution. On July 13, 2006, Mr. Spence filed a motion for a temporary order modifying child support and naming him residential parent pending the final hearing.
 {¶ 6} On December 8, 2006, Ms. Spence filed with the court a proposed shared parenting plan. On December 11, 2006, Mr. Spence filed with the court his proposed shared parenting plan. Also, on that date, the parties and their counsel appeared in court on Mr. Spence's motion for modification of parental rights. Counsel for Ms. Spence advised the court that both parties filed a proposed shared parenting plan with the court, that the parties intended to use Ms. Spence's shared parenting plan as the template, and that she would be reviewing Mr. Spence's shared parenting plan following the hearing to see "if there's some specific language that needs to be imported over on some semantical issues." Counsel for Ms. Spence then recited on the record certain provisions the parties agreed to, including the provisions regarding life insurance and *Page 3 
visitation, including holiday visitation. At the close of the hearing, the trial court asked counsel to prepare an entry.
 {¶ 7} On February 21, 2007, the trial court filed a "notice to produce" the judgment entry it requested at the hearing, and stated that the case would be dismissed without prejudice if the entry was not received within ten days. Ms. Spence filed a motion requesting a fourteen day extension in which to file the judgment entry. However, no such entry was filed with the court.
 {¶ 8} On April 3, 2007, the trial court scheduled an attorney conference for April 25, 2007. Although there is no transcript from this conference, we can deduce from a subsequent journal entry and pleadings the trial court apparently asked counsel to each prepare a proposed order shared parenting plan, which both parties did submit to the court. On May 17, 2007, the trial court entered an interim judgment with respect to child support. In this order, the court indicated that it was still reviewing the documents and transcript of the December 11, 2006 hearing to reach a final determination on the issues.
¶ 9} On May 18, 2007, Mr. Spence filed a motion for an order scheduling an in-camera interview with the parties' minor child, which the court initially granted. However, Ms. Spence objected to the in-camera interview on the ground the court had before it proposed orders and shared parenting plans and the parties were awaiting a decision. Ms. Spence acknowledged that the parties could not reach an agreement as to the wording of the shared parenting plan and that "each party submitted a proposed order and shared parenting plan. Based upon an attorney conference held last month, the court ordered that a transcript of the December 11, 2006 proceedings be typed so *Page 4 
that the court could select one of the previously submitted proposed orders." The court canceled the previously scheduled in-camera interview.
¶ 10} Ultimately, on July 6, 2007, the trial court selected Mr. Spence's proposed order and shared parenting agreement. Ms. Spence filed the instant appeal, raising one assignment of error for our review:
¶ 11} "The trial court erred in selecting Father's Entry as it did not comport with the agreement reached by the parties and read into the record."
¶ l2} Standard of Review
 ¶ 13} "Decisions of a trial court involving the care and custody of children are accorded great deference upon review. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of that court's discretion. Davis v. Flickinger, 77 Ohio St.3d 415, 418." Salisbury v.Salisbury, 11th Dist. Nos. 2005-P-0010 and 2005-P-0084, 2006-Ohio-3543, at ¶ 89.
¶ l4} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." Id., citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 (citations omitted). "The highly deferential abuse of discretion standard is particularly appropriate in child custody cases, since the trial judge is in the best position to determine the credibility of the witnesses and there `may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" Id., citing Wyatt v. Wyatt, 11th Dist. No. 2004-P-0045, 2005 Ohio 2365, at ¶ 13 (citation omitted). "In so doing, a reviewing court is not to weigh the evidence `but must ascertain from the *Page 5 
record whether there is some competent evidence to sustain the findings of the trial court.'" Id., citing Clyborn v. Clyborn (1994),93 Ohio App.3d 192, 196.
¶ l5} Proposed Shared Parenting Plans
 ¶ 16} Ms. Spence's sole argument is that the trial court erred in selecting Mr. Spence's shared parenting plan because it did not comport with the evidence and the agreement read into the record on December 11, 2006. In particular, she points out, inter alia, the following additions and/or deletions made by Mr. Spence that conflict with the "in-court agreement." Specifically, she asserts that:
¶ l7} 1) Mr. Spence deleted the word "companionship" and replaced it with the word "possession" throughout the plan;
¶ 18} 2) Mr. Spence added language in section 3.03 requiring, in the event a parent is hospitalized, that the other parent be required to facilitate visitation while hospitalized;
¶ l9} 3) Mr. Spence added a provision in section 3.06 requiring parental notification when their daughter is ill or injured and requiring the parents to determine whether visitation should be forfeited during this period;
¶ 20} 4) Mr. Spence added language in sections 4.01 and 4.02 stating that each parent must provide the other with a written itinerary of their vacation times and contact information and that priority of vacation time shall be given to the parent who makes the request first;
¶ 21} 5) Mr. Spence deleted language in section 6.02 reflecting that it was in their child's best interest to deviate from the child support guidelines; *Page 6 
 ¶ 22} 6) Mr. Spence deleted language in section 6.03 requiring both parents to discuss the appropriateness and need for special expenditures, such as lessons, activities, musical instruments, and sports equipment;
¶ 23} 7) Mr. Spence added language in sections 9.04 and 12.01 denying a parent access to medical information from providers where the parent has signed a confidentiality clause for their daughter's benefit;
¶ 24} 8) Mr. Spence added language in paragraph 16.01 requiring each parent to keep clothing for their daughter at their respective residences;
¶ 25} 9) Mr. Spence changed language in section 14.01, the life insurance provision as follows: In the original divorce decree, the parties were to maintain life insurance in the amount of $300,000, with their daughter being the beneficiary of 60% of the proceeds and the other parent as 40% beneficiary. At the December 11, 2006 hearing, the parties allegedly agreed to a modification requiring each parent to carry a $200,000 policy, with the ex-spouse being the beneficiary of $120,000 and the child the beneficiary of $80,000 "which comports with the parties' divorce decree."[1] Ultimately, Mr. Spence's entry designated the child as the beneficiary of $80,000 and the other parent as trustee of $120,000. Mr. Spence also added the following language: "The One Hundred and Twenty Thousand ($120,000.00) policy payable to the surviving parent supersedes the approximate support obligation of either party by approximately $60,000.00 and it is expected that either parent would invest or otherwise spend this money in a way that is meant ultimately for Melissa's direct benefit or gain;" and *Page 7 
 ¶ 26} 10) Mr. Spence modified the companionship schedule "agreed to" in court. He deleted certain holidays, including President's Day, Mother's Day, Father's Day, Melissa's birthday; both parents' birthdays. Mr. Spence also switched the years for certain holidays and deleted the reference that each parent would split Christmas holiday break evenly.
¶ 27} Validity of In-Court "Agreement"
 ¶ 28} Initially, we note that the crux of Ms. Spence's argument is that due to the modifications and departure from what was "agreed to" in court, the trial court erred in selecting Mr. Spence's proposed agreement. While we recognize that the judgment entry the trial judge signed was captioned an "agreed judgment entry," we find that this was actually a misnomer since ultimately each party submitted their own proposed entry for the court's consideration. Thus, as demonstrated by the subsequent conduct of the parties and their failure to submit one agreed entry to the court, we disagree with Ms. Spence's position and find that there was never an agreed entry. In this regard, Ms. Spence's error as assigned, that the trial court erred in selecting Mr. Spence's entry was erroneous since it did not comport with the in-court "agreement," on its face lacks merit since there was never an agreement reached.
¶ 29} In fact, it is readily apparent to us that what started as an "agreed" entry as to most but not all contested issues quickly became contested as to all issues, as evidenced by the fact that the parties submitted two proposed shared parenting plans. Even Ms. Spence stated in pleadings following the December 11, 2006 hearing that the parties were unable to agree to a shared parenting plan. *Page 8 
 ¶ 30} We recognize that "[i]n general, oral settlement agreements made in the presence of the court are valid and binding contracts.Spercel v. Sterling Industries, Inc. (1972), 31 Ohio St.2d 36. In addition, in-court agreements are enforceable even in the absence of a written agreement and even in the absence of signatures. Holland v.Holland (1970), 25 Ohio App.2d 98, paragraph two of the syllabus."Hardesty v. Hardesty, 11th Dist. Nos. 2004-G-2582, 2005-G-2614, 2006-Ohio-5648, at ¶ 8. However, as is true with every contract, in order to be considered valid, there must be a meeting of the minds.Phillips v. Phillips, 5th Dist. Nos. 2004CA00105, 2004CA00005,2005-Ohio-231, at ¶ 29. Thus, where parties in a divorce action reach a preliminary agreement as to the allocation or reallocation of parental rights and responsibilities, but fail to submit a joint shared parenting plan, the reallocation of parental rights is deemed contested.Stroud v. Lyons, 11th Dist. No. 2002-A-0050, 2003-Ohio-6773, at ¶ 36.
¶ 31} In this case, where the parties failed to submit a joint order and shared parenting plan, and instead, after agreeing to certain terms on the record submitted two competing versions, the trial court was not required to choose the version that more closely comported with what was attempted to be agreed upon in court. But when a court is confronted with dueling orders and dueling shared parenting plans, regardless of whether the duel is sparked by a drafting dispute or "buyer's remorse" prompting an effort to change the terms, all must recognize that this process is a creation of statute and the statutory scheme must be followed. Thus, we must determine whether the trial court complied with the mandates of R.C. 3109.04 in selecting Mr. Spence's shared parenting plan.
¶ 32} Trial Court's Selection of Shared Parenting Plan and Whether itComports With the Requirements of R.C. 3109.04 *Page 9 
 ¶ 33} When both parties have submitted proposed shared parenting plans, the trial court is required to follow the procedures set forth in R.C. 3109.04(D)(1)(a)(ii), which provides:
¶ 34} "If each parent * * * files a motion and each also files a separate plan, the court shall review each plan filed to determine if either is in the best interest of the children. If the court determines that one of the filed plans is in the best interest of the children, the court may approve the plan. If the court determines that neither filed plan is in the best interest of the children, the court may order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections, or may select one of the filed plans and order each parent to submit appropriate changes to the selected plan to meet the court's objections. If changes to the plan or plans are submitted to meet the court's objections, and if any of the filed plans with the changes is in the best interest of the children, the court may approve the plan with the changes. If changes to the plan or plans are not submitted to meet the court's objections, or if the parents submit changes to the plan or plans to meet the court's objections but the court determines that none of the filed plans with the submitted changes is in the best interest of the children, the court may reject the portion of the parents' pleadings or deny their motions requesting shared parenting of the children and proceed as if the requests in the pleadings or the motions had not been made. If the court approves a plan under this division, either as originally filed or with submitted changes, or if the court rejects the portion of the parents' pleadings or denies their motions requesting shared parenting under this division and proceeds as if the requests in the pleadings or the motions had not been made, the court shall enter in the *Page 10 record of the case findings of fact and conclusions of law as to thereasons for the approval or the rejection or denial. Division (D)(1)(b) of this section applies in relation to the approval or disapproval of a plan under this division." (Emphasis added.)
¶ 35} Thus, pursuant to R.C. 3109.04, the trial court has authority to select one proposed shared parenting plan and to reject the other. However, R.C. 3109.04 (D)(1)(a)(ii) expressly requires a trial court to enter in the record findings of fact and conclusions of law as to the reasons for approving a shared parenting plan or for refusing to order shared parenting and to make a determination that the shared parenting plan was in the child's best interests. Stroud at ¶ 31, 37. Some courts have found that substantial compliance with these requirements will suffice provided the trial court's reasons for approval or denial of the agreement are apparent from the record. See, e.g. Theiss v. Theiss
(April 11, 2001), 9th Dist. No. 00CA0022, 2001 Ohio App. LEXIS 1655.
¶ 36} Conversely, where no findings of fact and conclusions of law were made and it is unclear why the trial court chose one plan over the other, a remand has been deemed necessary. For instance, inStroud, we found that a remand was necessary because "the trial court failed to enter in the record findings of fact and conclusions of law as to the reasons for the approval of appellee's shared parenting plan, in violation of R.C. 3109.04(D)(1)(a)(ii) and (iii). Rather, the trial court merely provided a conclusory statement. In its March 7, 2002 judgment entry, the trial court stated that "the parties have failed to submit a joint shared parenting plan, therefore, the court in the best interests of the child, * * * and pursuant to the recommendation of the guardian ad litem, hereby adopts the [plan of appellee] * * *." Thus, we concluded that the failure to issue *Page 11 
findings of fact and conclusions of law warranted a remand. See, also,Dietrich v. Dietrich, 8th Dist. No. 88168, 2007-Ohio-2495, at ¶ 12, where the court ordered a remand because it could not "tell from the record why the court approved appellee's proposed plan. Both parties' proposed plans were submitted after the final trial date, so no discussion of the plans occurred on the record. Accordingly, we must reverse and remand for further consideration of the allocation of parental rights and responsibilities."
¶ 37} In this case, the record is silent as to why the trial court adopted Mr. Spence's shared parenting plan and rejected Ms. Spence's plan. We reiterate that it is within the court's discretion to choose one plan over the other. However, in accordance with R.C. 3109.04, the court must issue the requisite findings of fact and conclusions of law. This is particularly pertinent here, where although some of the differences between the two plans were semantical, other modifications, such as the provision regarding life insurance, were substantive in nature.
¶ 38} Because it is not apparent from the record why the trial court chose Mr. Spence's plan over Ms. Spence's plan, we find it necessary to remand the case to the trial court. We sustain Ms. Spence's assignment of error.
¶ 39} The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is reversed and remanded for further proceedings consistent with this opinion.
DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur.
[1] It appears that Mr. Spence mistakenly awarded their child 40% of the proceeds, rather than 60% of the proceeds, as contained in the original divorce decree. *Page 1